U.S DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED SHREVEPORT

JUL 28 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| FREDERICK LEWIS, JR. | NO. 5:16-cv-1115 |
| VERSUS | JUDGE: _____ |
| CITY OF SHREVEPORT | MAG. JUDGE _____ |

### COMPLAINT

(Race, Age and Sex Discrimination)

### Introduction

1. Plaintiff, Frederick Lewis, Jr. proceeding Pro Se, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, et seq., the Age Discrimination in Employment Act, 29 U.S.C § 621, et seq., and Breach of Contract under LA. Civ. Code art. 1983, et seq. Plaintiff contends that the City of Shreveport discriminated against him by passing him over for promotion or refusing to allow him the opportunity to apply for the position of Division Manager. Also that Defendant breached its agreement with Plaintiff, as an employee, to vigorously enforce its anti-discrimination policy.

### Jurisdiction

2. This Honorable Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, et seq., the Age Discrimination in Employment Act, 29 U.S.C § 621, et seq.

### Venue

3. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3); as Plaintiff

was and is employed by the City of Shreveport in Shreveport, Louisiana at the time of the unlawful discriminatory acts and breach of contract, plaintiff's employment records are maintained by the City of Shreveport in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## Exhaustion of Federal Administrative Remedies

4. Plaintiff filed a charge with the Equal Employment Opportunity Commission concerning defendant's alleged discriminatory conduct on April 2, 2015.

5. The Equal Employment Opportunity Commission issued a Notice of Right to Sue Letter, which I received on May 2, 2016.

6. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct, 60 days or more have elapsed.

## Parties

7. Plaintiff, Frederick Lewis, Jr., an African-American male who was at least 40 years old at the relevant times of this matter, is a citizen of the United States and a resident of Shreveport, Caddo Parish, Louisiana. At all times relevant to this suit, he was employed by the City of Shreveport in the Shreveport Public Assembly & Recreation Department.

8. Defendant, the City of Shreveport is a municipal government entity employing approximately 2800 employees, located in the City of Shreveport, Caddo Parish, Louisiana.

## Statement of Facts

9. Frederick Lewis, Jr., is a hard-working 60 plus-year-old who became employed by the City of Shreveport Public Assembly & Recreation Department (SPAR) on June 16, 2006 and

continually worked for SPAR until he transferred to the Department of Community Development on or about March 21, 2013. His initial position was Recreation Supervisor I where he started SPAR's first computer classes for citizens. He was latter promoted to Recreation Supervisor II. His job duties changed to Public Relations and Marketing Manager, a newly created position when his supervisor, Catherine Kennedy (white female), Recreation Division Manager, was transferred to a newly created Division of Communications. Plaintiff was transferred along with her to SPAR's administrative office at Government Plaza. While employed at SPAR, he was a conscientious and reliable employee who at all times performed his duties in an exemplary manner and got along well with his colleagues and management.

10. From the beginning of his employment with SPAR, Plaintiff complained of his extremely low pay and sought the opportunity for advancement and the resultant increase in pay. Although Plaintiff was transferred to the new Division of Communications, with a new job title, which in all other respects appeared to be a promotion, he received no pay increase.

11. Plaintiff's initial job duties as Recreation Supervisor I was Computer Instructor, wherein Plaintiff created SPAR's first computer program and taught computer classes for citizens at city-wide communities centers. Plaintiff created and designed the curriculum and taught the initial classes at the centers. The majority of the students were senior citizens in their late sixties up to the age of 95. Plaintiff was commended by students and their family members for his patience and ability to teach computer skills to many who were originally afraid to even touch a computer. In fact, his students were taught by him to build their own website, an astounding accomplishment for most. Later Plaintiff hired part time staff to assist in teaching the popular classes per his developed curriculum.

12. Plaintiff's immediate supervisor was Catherine Kennedy (white female), the Division

Manager of Recreation, who reported to Shelly Ragle (white female), the SPAR Department Director.

13. Plaintiff and Catherine Kennedy were moved from the SPAR's Wildwood location to the Government Plaza location when the new Division of Communications was created to accommodate Ms. Kennedy. As a result of the move to the new division, Plaintiff's job duties changed wherein he was named Public Relations and Marketing Manager. Plaintiff's new job duties included marketing and promoting SPAR events and programs including but not limited to press releases, public service announcements, print, radio and television advertisements. Plaintiff also maintained media relations, coordinated the design, development and continuing update of SPAR's first website, www.MySPAR.com. Additionally Plaintiff designed, created and approved all SPAR promotional materials and also created, designed and edited a monthly SPAR email newsletter, "SPAR eNews". Although every sign pointed to the new title and responsibilities being a promotion, plaintiff received no increase in pay. In fact, Plaintiff was congratulated by many of his co-workers on his promotion but was too embarrassed to tell them he had not been promoted.

14. Catherine Kennedy was later moved again, this time to the Division Manager of Event Services with Events Services' former manager Ronnie Hammond (white male) being moved to a previously unfilled position of Division Manager of Administration at SPAR's administrative offices in Government Plaza. Plaintiff was notified of the change offhandedly by Ms. Kennedy at a co-worker's birthday party when she announced to Plaintiff in front of everyone that she no longer would be his supervisor and that he should keep Glenda Ortego (white female) Confidential Secretary to Shelly Ragle, aware of his whereabouts. Also that Shelly Ragle, SPAR Director, would get with Plaintiff about the

changes. Ms. Ragle never did get with Plaintiff about the change, despite Plaintiff's email on October 14, 2011 to her requesting a meeting concerning same. She did not acknowledge receipt of or respond to the email.

15. On January 5, 2012, Plaintiff addressed a letter to Shelly Ragle requesting consideration for promotion to the position of Division Manager since Catherine Kennedy had been moved to Division Manager of Events Services. Shelly Ragle did not acknowledge receipt of or respond to the letter for over 7 months.

16. On or about the month of August 2012, Shelly Ragle advised Plaintiff that there was no position of Division Manager available, nor would there be one in the foreseeable future. She indicated that she would assist Plaintiff in transferring to a different Department in the City under the guise that the transfer from SPAR would offer Plaintiff a better opportunity for promotion and would better use plaintiff's education and talents and that SPAR would not have a position to utilize Plaintiff's talents and education.

17. On or about August 2012, Shelly Ragle notified Plaintiff of a position in the Department of Community Development and told Plaintiff she was transferring part of her budget to the Department of Community Development to help facilitate the transfer. She suggested that Plaintiff apply for the position when it was posted on the City's website. Plaintiff, relying on Shelly Ragle's assertions, believed that there was no opportunity for promotion to Division Manager at SPAR presently or in the future, and thus thanked Ms. Ragle for helping facilitate his transfer to a department with better opportunity. However, Plaintiff also advised her that he liked his job at SPAR and that his concern was with pay and opportunity. Plaintiff truly believed Ms. Ragle was looking out for his best interests only to later find out she was not being truthful to Plaintiff and had, in fact, knew that a position for Division Manager would be available less that two to three months after Plaintiff's

transfer. Ms. Ragle orchestrated Plaintiff's transfer from SPAR on the basis of untruthful statements that no Division Manager position would become available under a rouse to make way for the hiring of Becky Berry, an under 40 year old white female. Based on Plaintiff's experience, education, skill and the fact Plaintiff had performed the duties assigned to Ms. Berry as Division Manager in an exemplary manner, he was imminently qualified for the position. However, Ms. Ragle refused to even allow Plaintiff the opportunity to apply for the position.

18. Based on a response by Ms. Ragle to Plaintiff's complaint with the City's Human Resources Department, Becky Berry (under 40 white female) was hired as Division Manager of Administration in the month of July 2013, exact date unknown at this time. It is believed that Ms. Berry was hired through contract with In-Line Service (sic) a month or two prior to her official hire date with the City in July 2013.

19. When Shelly Ragle hired Becky Berry, she did not publicize the position, nor did she advise Plaintiff of the position opening, nor allowed him to apply for the position, despite the fact Plaintiff had made clear his desire for promotion to the position of Division Manager a few short months earlier. It is Plaintiff's assertion that it was part of Ms. Ragle's plan to deny Plaintiff knowledge of the position opening and the opportunity to apply for the position and her deceptive and untruthful statements that the position of Division Manager at SPAR was not available nor wold be for the foreseeable future.

20. As part of her deception, Shelly Ragle hired Ms. Berry in the Division of Administration rather than Communication, and created a job description for Becky Berry's position that uniquely reflected her experience and education. However, Becky Berry, despite said job description, performed the same duties plaintiff performed as Public Relations and Marketing Manager. She even was assigned Plaintiff's former office. Her starting pay of

$74,499.84 to perform essentially the same duties Plaintiff performed before his transfer, was more than twice the pay Plaintiff was paid, even after Plaintiff's 6 ½ years of employment at SPAR. Ronnie Hammond (white male) was promoted from Division Manager of Administration to Assistant to the Director. A far too common pattern and practice of Shelly Ragle creating positions to accommodate, hire and promote whites, but not doing the same for black employees, even when they perform the duties of the higher positions, i.e. Nick Robberson and Plaintiff.

21. As part of Shelly Ragle's pattern of disparate treatment of blacks and whites, when Catherine Kennedy was transferred from Division Manager of Recreation, Nick Robberson (black male) replaced her but was not promoted to the position of Division Manager, despite doing the job of a Division Manager. He was only promoted to the position of Division Manager approximately 3 years later when Becky Berry was hired as Division Manager. Nothing else had changed in his job situation other than Becky Berry being hired. It would have been blatant if Ms. Berry had been hired as a Division Manager when Mr. Robberson had been performing the duties of Division Manager, without the title or pay, for a number of years. Although Mr. Robberson had worked for SPAR close to 10 years and had been performing the duties of a Division Manager for approximately 3 years, Shelly Ragle, as was her pattern and practice of disparate treatment, paid Mr. Robberson close to $10,000 per year less than Ms. Berry's starting salary.

22. SPAR had five Division Managers when Plaintiff transferred. Joe Brown (white male), Russell DeLancy (white male), Ronnie Hammond (white male), Catherine Kennedy (white female) and Reginald Hodge (black male). As part of a continuing pattern and practice of Ms. Ragle's disparate treatment of black employees, Mr. Hodge's annual pay was a minimum of $10,000 less than his white counterparts.

23. Prior to Plaintiff's transfer, Shelly Ragle hired three young white employees at higher rates of pay than Plaintiff, who had worked at SPAR for 6 ½ years and had more education and experience that the new hires. Said employees were Derek Dalzell (white male), Samantha Harmeson (white female) and Esther Welland (white female), each well below the age of 40. Each, as was the norm for white employees at SPAR, received a starting salary in the $30,000+ range. Derek Dalzell who had just graduated from college was an intern who sat at a desk outside of Plaintiff's office. Said situation caused Plaintiff much frustration, embarrassment and humiliation.

24. Shelly Ragle treated black employees differently than white employees socially, in that she invited many of the white employees, but virtually none of the black employees to her home. She invited white female employees to lunch but not the black female or male employees. She also attended white staff birthday celebrations but was persona non gratis for black employees birthday celebrations. All of which empowered white employees and diminished black employees.

25. In the position of Public Relation and Marketing Manager for SPAR, Plaintiff's annual pay of $32,052 was some $20,000+ less than the average pay for a similar position in Shreveport and thousands less the other City employees in similar positions. Plaintiff's low pay was the result of his original extremely low starting pay that was the norm for black employees, which, in turn, held down all future pay because the City limits pay increases to 8% and up to 20% with a showing of special circumstances, regardless of performance or promotion. As such, Plaintiff's current pay and all future pay suffers as a result of the original discriminatory and disparate starting pay he received as a newly hired black employee at SPAR. Virtually all other black employees hired at SPAR suffer the same predicament. Their pay is forever anchored by the disparate treatment in pay SPAR

subjects black employees to.

26. In addition to Plaintiff, Camille Webb (black female) and Yolanda Buncom (black female) were hired as Supervisor I's at SPAR with a low starting pay in the low $20,000s or teens. However, Robin Jenkins (white male) was hired off the street as a Supervisor II at $30,000+ annually. As was a pattern and practice to cover the disparate treatment, Ms. Webb, Ms. Buncom and Plaintiff were promoted to Supervisor II at the same general time that Mr. Jenkins was hired off the street as a Supervisor II. Both Ms. Webb and Plaintiff had more education and all three had worked for SPAR years before Mr. Jenkins was hired.

27. Plaintiff's initial pay was approximately $24,000 per year despite his attempts to negotiate a fairer rate of pay. Plaintiff had been unemployed for nearly two years and accepted less than he knew he qualified for just to gain employment. Plaintiff later learned that SPAR, under the direction of Shelly Ragle, as a pattern and practice, discriminated against African American employees by paying them far less than white employees and refusing to hire them in certain higher rated and higher paying positions, which includes positions in Administration and Events Services, among others. That, in fact, there was a pattern and procedure wherein African-American employees' starting pay, with few exceptions, was overwhelmingly in the low $20,000's and teens, whereas white employees starting pay, with few exceptions, overwhelmingly was in the $30,000's.

28. Because Plaintiff relied on Shelly Ragle's deceptive actions and statements concerning the position of Division Manager at SPAR, Plaintiff did not become aware of Ms. Ragle's deception and racial discrimination in failing to promote and failing to allow Plaintiff to apply for the position of Division Manager until on December 12, 2014 when he had lunch with a former coworker from SPAR, who informed Plaintiff that Becky Berry had been

hired as a Division Manager, was assigned his old office and was performing virtually the same job duties Plaintiff had performed prior to his transfer from SPAR that was facilitated by Shelly Ragle. As such, Ms. Ragle's purposeful deception denied Plaintiff the knowledge of her illegal discriminatory acts and prevented Plaintiff the opportunity to file his claim timely from the date of said discriminatory acts. Said deception included Ms. Ragle falsely denying that a position of Division Manager would be available; Ms. Ragle, under the guise of helping Plaintiff, facilitated his transfer from SPAR to clear the way for the hiring Becky Berry for the position of Division Manager; although non-classified, not posting or publicizing the open position of Division Manager to deny Plaintiff knowledge of the position; not notifying or allowing Plaintiff the opportunity to apply for the position despite him expressing his interest in the position; and disguising the job title and job duties of the position despite Ms. Berry performing virtually the same job duties as had Plaintiff in the Division of Communications before his transfer.

29. Despite a promulgated Mayoral Executive Order 09-1, wherein the City should vigorously enforce its non-discrimination policy at all levels of City government. The City violated said Executive Order by failing to vigorously enforce it's non-discrimination policy by assigning an investigator, Colleen Hull (white female), who was friends with the very SPAR management she was to investigate, and who then did a faux investigation wherein she rubber stamped Shelly Ragle's explanation of events without giving Plaintiff an opportunity to respond or refute the many false statement made by Shelly Ragle to cover here discriminatory treatment of Plaintiff and other black employees of SPAR. Ms. Hull interviewed none of the witnesses Plaintiff provided to support his complaint, nor it seems did she investigate Plaintiff's allegations of the disparate treatment of blacks in pay and position at SPAR. She did however, investigate Plaintiff's allegation that the one black

Division Manager's pay was significantly less that his white contemporaries and did find that allegation to be true. Plaintiff relied on said Executive Order and followed its procedure by filing his complaint of racial, age and gender discrimination.

## First Cause of Action

## Racial and Gender Discrimination in Violation of Title VII

30. Plaintiff hereby repeats and realleges each and every preceding paragraph herein, inclusive, as if fully set forth herein.

31. Defendant, through it's employee, SPAR Department Director Shelly Ragle, discriminated against Plaintiff on the basis of race in violation of Title VII by denying him the same terms and conditions of employment as afforded to white employees, including but not limited to failure to promote and denying Plaintiff the opportunity to apply for the position of Division Manager despite the fact Plaintiff had request said promotion, Plaintiff was an employee of the City and a military veteran, each of which was supposed to be a preference in hiring and promotions with the City.

32. Defendant, through it's employee, SPAR Department Director Shelly Ragle, discriminated against Plaintiff on the basis of race in violation of Title VII by denying him the same terms and conditions of employment as afforded to white employees, including but not limited to failure to promote and denying Plaintiff the opportunity to apply for the position of Division Manager despite the fact Plaintiff had request said promotion, Plaintiff was an employee of the City and a military veteran, each of which was supposed to be a preference in hiring and promotions with the City.

33. Defendant, through it's employee, Department Director Shelly Ragle, discriminated against Plaintiff on the basis of race in violation of Title VII by denying him the same

terms and conditions of employment as afforded to white employees, including but not limited paying Plaintiff and other black employees at the same rate much less than similarly situated white employees. A result of which continues to stunt Plaintiff amnd other black employees pay and will continue to do so as long as they are employed with the City of Shreveport.

34. Defendant, through it's employee, Department Director Shelly Ragle, discriminated against Plaintiff on the basis of sex in violation of Title VII by denying him the same terms and conditions of employment as afforded to female employees, including but not limited to failure to promote and denying Plaintiff the opportunity to apply for the position of Division Manager despite the fact Plaintiff had request said promotion, Plaintiff was an employee of the City and a military veteran, each of which was supposed to be a preference in hiring and promotions with the City. Plaintiff instead hired a significantly younger white female, Becky Berry, off the street and with no military experience.

## Second Cause of Action

### Age Discrimination in Violation of Age Discrimination in Employment Act

35. Plaintiff hereby repeats and realleges each and every preceding paragraph herein, inclusive, as if fully set forth herein.

36. Defendant, through it's employee, Department Director Shelly Ragle, discriminated against Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act by denying him the same terms and conditions of employment as afforded to a significantly younger female employee, including but not limited to failure to promote and denying Plaintiff the opportunity to apply for the position of Division Manager despite the fact Plaintiff had request said promotion, Plaintiff was an employee of the City and a

military veteran, each of which was supposed to be a preference in hiring and promotions with the City. Plaintiff instead hired a significantly younger white female, Becky Berry, off the street and with no military experience.

### Third Cause of Action

### Breach of Contract

37. Plaintiff hereby repeats and realleges each and every preceding paragraph herein, inclusive, as if fully set forth herein.

38. Defendant breached its agreement to vigorously enforce its anti-discrimination policy by allowing a biased investigator to put on a sham investigation and rubber stamp the statements of Shelly Ragle. Plaintiff relied on said policy and followed the proper procedure to file a complaint of discrimination. The defendant benefited from said policy by having a nondiscriminatory work environment that promotes excellence and good morale among its employees. Also to avoid unnecessary costly litigation caused by its failure to follow it Executive Order and vigorously enforce said anti-discrimination policy.

### Prayer for Relief

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of the defendant through its employee Shelly Ragle, complained of herein violate the laws of the United States, the State of Louisiana and the City of Shreveport;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position of Division Manager he would have occupied but for Defendant's discriminatory disparate treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment;

D. An award of damages in an amount to be determined at trial, plus judicial interest, to compensate Plaintiff for all monetary and/or economic loss;

E. An award of damages in an amount to be determined at trial, plus judicial interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment and advancement;

F. An award of damages in an amount to be determined at trial, plus judicial interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, embarrassment, humiliation, stress and anxiety, emotional pain and suffering, and emotional distress;

F. An award of back pay, forward pay and benefits to place Plaintiff in the financial position he would have attained had Defendant not unlawfully discriminated against him;

G. An award of all costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law;

H. Such other and further relief as the Court may deem just and proper.

### Jury Demand

Plaintiff hereby requests a trial by jury on all issues of fact and damages stated herein.

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: 91) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

By: _[signature]_
**FREDERICK LEWIS, JR.**
3800 Creswell Ave.
Shreveport, LA 71106
318-344-9662
justustm2@gmail.com

**PRO SE**

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lewis, Jr., Frederick
Pro Se

**DEFENDANTS**
City of Shreveport

(b) County of Residence of First Listed Plaintiff: Caddo Parish
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Caddo Parish
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
3800 Creswell Ave., Shreveport, LA 71106
318-344-9662

Attorneys *(If Known)*

Filed stamp: Western District of Louisiana, Filed, 28 P 6:5?, Tony R. Moore, Clerk, By: Deputy

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 2003 et seq.; 42 U.S.C 1981a, et seq.; 29 U.S.C. 621, et seq. LA Civ. Code art. 1983, et seq.

Brief description of cause:
Racial, gender and age discrimination and breach of contract.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 07/28/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____