UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| FREDERICK LEWIS, JR. | CIVIL ACTION NO. 16-1115 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| CITY OF SHREVEPORT | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment by Defendant, City of Shreveport ("the City"). [Record Document 14]. The parties have filed an opposition and a reply that have been considered by the undersigned. [Record Documents 19 and 20]. Plaintiff, Frederick Lewis, Jr., alleges that his employer, the City, discriminated against him in hiring, promotion, and compensation on the basis of race and gender in violation of Title VII, on the basis of race in violation of 42 U.S.C. § 1981, and on the basis of age in violation of the Age Discrimination in Employment Act ("the ADEA"). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## I. Background

### A. Factual Background

Plaintiff is a sixty-eight-year-old African-American male. [Record Documents 1 at 2 and 5-2 at 2]. He began work for the City as a Recreation Supervisor I in the Shreveport Public Assembly and Recreation Department ("SPAR") in June 2006. [Record Documents 1 at 2 and 14-2 at 2]. His initial assignment was to teach computer classes at community centers throughout Shreveport. [Record Documents 14-2 and 2 at 14-3 at 10]. Plaintiff was subsequently promoted to Recreation Supervisor II. [Record Documents 14-2 at 2 and 14-3 at 11]. Around that time, he was relocated from

1

one of the community centers to Government Plaza along with his supervisor, Catherine Kennedy

("Kennedy"). [Record Document 14-2 at 2]. While at Government Plaza, Plaintiff was responsible

for maintaining SPAR's website and other public outreach duties. [Record Documents 1 at 4 and 14-

2 at 2].

There are factual disputes regarding Kennedy's precise title and SPAR's organizational

structure. Both parties agree that Plaintiff reported to Kennedy. [Record Documents 14-1 at 2 and

19 at 5]. However, Plaintiff contends that after the move to Government Plaza, he received the job

title of Public Relations and Marketing Supervisor and was placed in the newly-created Division of

Communication Services. [Record Documents 1 at 3 and 14-3 at 11]. He explains that Kennedy, who

had been the Division Manager of Recreation, became the Division Manager of Communication

Services. [Record Documents 1 at 3 and 19 at 8–9]. Conversely, Defendant maintains that there was

no Division of Communication Services at SPAR, that Plaintiff never had any job title other than

Recreation Supervisor, and that while Kennedy's duties included communications, she retained her

position as the Division Manager of Recreation. [Record Document 14-2 at 2–3].

At some point in late 2011 or 2012, Kennedy moved from the position she then occupied to

the position of Division Manager of Event Services. [Record Documents 1 at 4 and 14-2 at 3].

Plaintiff contends that this created an open position of Division Manager of Communication

Services. [Record Documents 1 at 4 and 14-3 at 3]. Defendant contends that there never was any

such position, that Kennedy moved from Recreation to Event Services, and that her former position

as the Division Manager of Recreation was filled by another employee, Nick Roberson. [Record

Document 14-2 at 3–4].

When Kennedy moved to Event Services, Plaintiff approached the Director of SPAR, Shelly

Ragle ("Ragle"), about being promoted to a division manager position. [Record Documents 1 at 5

2

and 14-2 at 3]. Plaintiff alleges that this occurred by letter in January 2012; Defendant indicates only that it occurred in 2012. [Record Documents 1 at 5 and 14-2 at 3]. At a meeting, Ragle told Plaintiff that there was no division manager position available. [Record Documents 1 at 5 and 14-2 at 3]. Plaintiff alleges that this meeting did not occur until August 2012, while Defendant indicates that the meeting occurred at some point after Plaintiff's initial inquiry about the division manager position. [Record Documents 1 at 5 and 14-2 at 3]. With Ragle's assistance, Plaintiff transferred to the Department of Community Development on March 21, 2013. [Record Documents 1 at 5–6, 14-2 at 2, and 14-3 at 7].

In July 2013, Defendant hired Rebecca Berry ("Berry") as the Division Manager of Administration at SPAR. [Record Document 14-2 at 4]. Berry is a white woman under the age of forty. [Record Document 14-1 at 3]. The position is non-classified and was not publicly advertised. [Record Document 14-2 at 7]. Defendant alleges that Ragle did not inform Plaintiff of the position because she believed that he lacked the necessary skills, qualifications, and experience to serve as the Division Manager of Administration. [Record Documents 14-2 at 5–6 and 14-3 at 15]. The parties dispute what duties Berry performed as the Division Manager of Administration. Plaintiff has testified on the basis of information relayed to him by other SPAR employees that Berry was performing the same duties that Plaintiff had performed in his former position at SPAR (i.e., website management and public relations). [Record Document 14-3 at 17–19]. Conversely, Defendant avers that Berry's duties were much broader and included budgeting, strategic planning, contract auditing, managing IT projects, and supervising three employees. [Record Document 14-2 at 5].

After discovering that Berry had been hired as the Division Manager of Administration in December 2014, [Record Document 1 at 9–10], Plaintiff filed a complaint with the City's Human Resources Department on December 22, 2014, [Record Document 7-1 at 7]. After the City found

that Ragle had not violated its nondiscrimination policies, Plaintiff filed an EEOC charge on May

12, 2015. [Record Documents 5-3 at 3and 7-1 at 7]. The EEOC rejected Plaintiff's complaint as

untimely on April 29, 2016. [Record Document 5-2 at 1].[1]

## B. Procedural Background

Plaintiff's complaint raised various causes of action under Title VII, § 1981, and the ADEA

as well as for breach of contract under Louisiana law. Defendant moved to dismiss the case under

Rule 12(b)(6), arguing that Plaintiff's ADEA and Title VII failure-to-promote claims were barred

by the statute of limitations, that Plaintiff failed to adequately plead a § 1981 claim, and that Plaintiff

failed to state a state law breach of contract claim. [Record Documents 5 and 5-1]. The Court

dismissed Plaintiff's state law claim, but denied Defendant's motion in all other respects. [Record

Document 9]. Defendant now brings before the Court a motion for summary judgment on all

remaining claims. [Record Document 14].

## II. Analysis

Plaintiff claims that he was subject to four distinct acts of unlawful discrimination. Although

Plaintiff's pleading is not perfectly clear, because he is proceeding pro se, the Court holds him to less

stringent standards and interprets his filings generously to identify these four instances. *See Calhoun

v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376,

378 (5th Cir. 2002)). First, he has alleged that failing to hire him as the Division Manager of

Administration violated Title VII, § 1981, and the ADEA. Second, he has alleged that failing to

promote him to the division manager position vacated by Kennedy violated Title VII, § 1981, and

the ADEA. Third, he has alleged that failing to compensate him as well as white employees at the

---

[1] This Court subsequently found that Plaintiff's failure-to-promote claims under Title VII and
the ADEA were timely. [Record Document 9 at 6].

time that he was hired violated Title VII and § 1981. Finally, he has alleged that because he was performing the same duties as Berry but at less than half her salary, he was subject to wage discrimination in violation of Title VII and § 1981.

## A. <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal citations and quotations marks omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985). While not

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. *Little*, 37 F.3d at 1075 (citing *Armstrong v. City of Dall.*, 997 F.2d 62 (5th Cir. 1993)).

### B. <u>Plaintiff's Summary Judgment Evidence</u>

As an initial matter, the Court must determine what evidence it may consider when evaluating the instant motion. In support of its motion, Defendant has submitted an affidavit by Ragle and portions of Plaintiff's deposition. [Record Documents 14-2 and 14-3]. Plaintiff has attached a series of emails and other documents to his opposition, [Record Documents 19-1 and 19-2]; his remaining support consists of unsubstantiated assertions in his pleadings, motions, and memoranda.

Competent summary judgment evidence includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). A verified complaint may be considered at summary judgment, but because Plaintiff's complaint does not comply with the requirements of Rule 56(c)(4), it does not constitute evidence at this stage. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Similarly, because documents must be authenticated in order for the Court to consider them, the Court cannot give any weight to the unauthenticated documents that Plaintiff attached to his application. *See id.* (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)).

Therefore, at present there are only two pieces of competent summary judgment evidence: Ragle's affidavit and the portions of Plaintiff's deposition that have been filed into the record. The Court may evaluate any of this evidence, even if the parties have not cited to it, Fed. R. Civ. P. 56(c)(3), but may only consider those portions that would be admissible into evidence at trial,

*Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Duplantis*, 948 F.2d at 192 ("Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." (internal quotation marks and citations omitted)). As a result, the Court can give no significance to hearsay statements in deposition testimony. *See Fowler*, 68 F.3d at 126. Therefore, the Court will evaluate the instant motion in light of Ragle's affidavit and the non-hearsay portions of Plaintiff's deposition.

## C. Failure To Hire Plaintiff as the Division Manager of Administration

Plaintiff, an African-American male, alleges that by hiring Berry, a white woman, as the Division Manager of Administration, Defendant discriminated against him on the basis of both race and gender. [Record Document 1 at 11–12]. Defendant counters that Plaintiff was unqualified for the position and that Berry's qualifications suited its requirements. [Record Document 14-4 at 10–12].

### 1. Title VII Claim

Title VII provides that an employer may not "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). Where, as in the instant case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas* framework applies.[3] *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803–04 (1973). To survive summary judgment in an

---

[3]Plaintiff has admitted that he has no direct evidence that Ragle acted with discriminatory intent. [Record Document 14-3 at 16].

employment discrimination case, a plaintiff must first establish a prima facie case of discrimination. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). If the plaintiff does so, the employer must produce a legitimate, non-discriminatory reason for the challenged employment decision. *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362–63 (5th Cir. 2013) (citing *Manning*, 332 F.3d at 881). If the employer produces such an explanation, the plaintiff must then demonstrate that the employer's reason is pretextual, by showing either that it is "unworthy of credence" or that it was inspired by a discriminatory motive. *Id.*

To establish a prima facie failure-to-promote case, a Title VII plaintiff must show that she is a member of a protected class, that she sought and was qualified for an open position, that she was rejected from the position, and that the employer hired a person outside of her class. *See McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015) (citing *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 643 (5th Cir. 2014)). However, if an employer does not advertise job openings so that employees may apply for promotion, the plaintiff need only show that she would have applied had she known of the open position. *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 570 (5th Cir. 1988) (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1134 (11th Cir. 1984)).

Plaintiff is an African-American male and so belongs to a protected class. [Record Documents 14-1 at 1 and 19 at 5]. The Division Manager of Administration position was filled by Berry, a white woman. [Record Document 14-1 at 3]. While Plaintiff did not apply for the position, there is no dispute that he had expressed interest in a promotion to the rank of division manager. [Record Documents 14-2 at 3 and 14-3 at 15]. Similarly, there is no dispute that the position was not advertised and thus that Plaintiff did not have the opportunity to formally apply and be rejected. [Record Documents 14-2 at 6–7 and 14-3 at 15].

Although Plaintiff need not show that he was more qualified than Berry, he must still show

that he was qualified to serve as the Division Manager of Administration. *See Bernard*, 841 F.2d at 570. Defendant's uncontroverted evidence describes the duties of the Division Manager of Administration: budgeting, strategic planning, auditing outside contracts, managing IT projects, preparing reports using statistical data, and supervising three employees. [Record Document 14-2 at 5]. Ragle indicates that Plaintiff was unqualified for this position because its duties and responsibilities exceeded those of Plaintiff's prior position. [*Id.* at 5–6]. In response, Plaintiff has failed to demonstrate his own qualifications. In his deposition, he indicates that he took a small number of accounting classes in the 1970s, that he did some general accounting to manage his solo law practice, and that he had experience in education, public relations, and marketing prior to his employment with SPAR. [Record Document 14-3 at 3–4, 8–9]. Plaintiff thus fails to establish that he was qualified for duties such as budgeting, auditing outside contracts,[4] project management, statistical analysis, and supervision of other employees. While Plaintiff asserts that the duties of Berry's position at the time that she was hired were identical to his former duties (and thus, by implication, that he was qualified to perform them), [*id.* at 17–19], Plaintiff has presented no competent summary judgment evidence to this effect. Plaintiff has therefore failed to establish a prima facie failure-to-hire case.[5]

---

[4] Plaintiff testifies that he took an auditing class while earning his business degree, but has not testified to experience performing audits. [Record Document 14-3 at 4].

[5] Plaintiff has also alleged a pattern or practice of racial discrimination at SPAR on the basis of unsubstantiated allegations that black employees are paid less than comparable white employees. [Record Document 1 at 6–9]. Although Plaintiff argues that this pattern enables him to establish his prima facie case, [Record Documents 14-3 at 16–17 and 19 at 15–16], he has not supported his allegations through competent summary judgment evidence, such as affidavits of affected employees or expert reports containing statistical analyses. *See Lopez v. Laborers Int'l Union Local No. 18*, 987 F.2d 1210, 1213–16 (5th Cir. 1993) (discussing the features required of acceptable statistical proof of a pattern or practice of discrimination).

Even if Plaintiff had presented competent pattern-or-practice evidence, Fifth Circuit precedent would likely foreclose its use to establish his prima facie case. As Plaintiff indicated, the

Even if Plaintiff had proven his prima facie case, the City has stated non-discriminatory reasons for its decision not to offer Plaintiff the position. In her affidavit, Ragle stated, "I did not advise Mr. Lewis of the opening for the position of Division Manager [of] Administration, or consider him for the position, because based on my personal work experience with Mr. Lewis, I knew he did not possess the skills and qualifications needed for the position." [Record Document 14-2 at 6]. Ragle also identified the duties of the Division Manager of Administration and demonstrated that they significantly exceeded Plaintiff's responsibilities as a Recreation Supervisor II. [*Id.* at 2–3, 5–6].[6]

---

D.C. Circuit has accepted pattern-or-practice proof as circumstantial evidence of discrimination in an individual case. *Davis v. Califano*, 613 F.2d 957, 962 (D.C. Cir. 1979). However, the Fifth Circuit has not accepted this holding:

> Given the nature and purpose of the pattern and practice method of proof, this Court's precedents, and the precedents of other circuits, the district court did not err in refusing to apply the *Teamsters* method of proof as an independent method of proof to the appellants' individual claims in lieu of the *McDonnell Douglas* method at the summary judgment stage.

*Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 356 (5th Cir. 2001), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Later cases have cited *Celestine* for the proposition that the "pattern-or-practice method of proof [is] not available in private, non-class action lawsuits." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *see also Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 407–08 (5th Cir. 2016) (same), *cert. denied*, 137 S. Ct. 820 (2017). The weight of circuit precedent thus favors a view that this avenue of proof is unavailable in Plaintiff's case. Although Plaintiff could use evidence of discrimination directed at other employees to demonstrate pretext, *McDonnell Douglas*, 411 U.S. at 804–05, because Plaintiff has not produced any competent evidence of such discrimination, the Court cannot consider it when evaluating whether Plaintiff has shown that Defendant's reasons are pretextual.

[6] Although Defendant emphasizes Berry's qualifications, [Record Documents 14-2 at 5–6 and 14-4 at 12], it appears that Ragle made the decision not to invite Plaintiff to apply before she became aware of Berry's qualifications. As a result, Berry's qualifications are not a legitimate, non-discriminatory reason for failing to notify Plaintiff of the job opening. *See Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004) ("We hold as a matter of law that an employer who offers the relative qualifications of the applicants as its legitimate, nondiscriminatory reason must show that, at the time it made the decision adverse to the complaining applicant, it already knew that the ultimately selected individual's qualifications were superior.").

Plaintiff has failed to rebut this reasoning through citations to the record. His central argument is that Berry's initial duties were identical to his own. [Record Document 19 at 6, 10, 14]. However, Plaintiff's source for this argument is statements made to him by other SPAR employees. [Record Document 14-3 at 17–19]. Because the Court cannot consider hearsay at the summary judgment stage, *see Fowler*, 68 F.3d at 126, Plaintiff has failed to carry his burden to rebut Defendant's explanation that he lacked the requisite skills and qualifications to be invited to apply for the position. Therefore, summary judgment is granted for Defendant as to Plaintiff's Title VII claim regarding the failure to hire him as the Division Manager of Administration.

### 2. Section 1981 Claim

Plaintiff alleges that by filling the Division Manager of Administration position with a white applicant, Defendant violated § 1981. [Record Document 1 at 1]. Defendant maintains that all of Plaintiff's § 1981 claims are subject to a four-year statute of limitations and hence are time-barred. [Record Document 14-4 at 14].

Among other things, § 1981 protects the right of racial minorities to "make and enforce contracts." 42 U.S.C. § 1981 (2012). The Supreme Court initially interpreted this provision to apply only to racial discrimination in contract formation, not to post-formation discriminatory conduct such as harassment or failure to promote. *Patterson v. McLean Credit Union*, 491 U.S. 164, 183–85 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. In 1991, Congress amended § 1981 to make clear that it applied to the "performance" of a contract as well as the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Civil Rights Act of 1991 § 101 (codified at 42 U.S.C. § 1981(b)).

However, the statute of limitations applicable to these post-formation claims differs from that applicable to formation claims. Interpreting the pre-amendment version of § 1981, the Fifth Circuit

held that § 1981 claims arising in Louisiana take their statute of limitations from the one-year prescriptive period for torts under Louisiana law. *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir. 1985). In 1990, Congress created a general four-year limitations period for federal civil actions. Judicial Improvements Act of 1990, Pub. L. 101-650, § 313(a), 104 Stat. 5114 (codified at 28 U.S.C. § 1658 (2012)). Subsequently, the Supreme Court held that causes of action authorized by the 1991 amendment to § 1981 are governed by the four-year limitations period because the 1991 amendment was enacted after the statute creating the four-year period. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Hence, wage disparity claims, which only became cognizable after the 1991 amendment to § 1981, are subject to a four-year statute of limitations. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 516 (5th Cir. 2008) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291–92 (4th Cir. 2004)). Conversely, claims that were cognizable before the 1991 amendment remain subject to a one-year statute of limitations. *Id.* (citing La. Civ. Code Ann. art. 3492 (2011); *Taylor*, 775 F.2d at 618). A failure-to-promote claim was cognizable under § 1981 prior to the 1991 amendments "where the promotion r[o]se[] to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson*, 491 U.S. at 185. Therefore, in Louisiana when the responsibilities of a new position differ considerably from those of an employee's current position, an employer's racially motivated refusal to promote a current employee to the new position triggers liability under § 1981 subject to a one-year statute of limitations. *See Hill v. Cleco Corp.*, 541 F. App'x 343, 345 (5th Cir. 2013). To determine whether a new position is significantly different from an employee's current position, a court "must compare the employee's current duties, salary, and benefits with those incident to the new position." *Police Ass'n of New Orleans ex rel. Cannatella v. City of New Orleans*, 100 F.3d 1159, 1171 (5th Cir. 1996). Accordingly, the Fifth Circuit has held that the addition of supervisory duties combined with a higher

salary and eligibility for further promotion renders a failure-to-promote claim cognizable under the pre-amendment version of § 1981. *Id.*

The Division Manager of Administration position differed from Plaintiff's position because it included supervisory and budgetary duties and commanded a much higher salary. Plaintiff has testified that Berry earns two and a half times what he did while he worked at SPAR. [Record Document 14-3 at 15]. Although Plaintiff alleges that Berry "performed the same duties plaintiff performed as Public Relations and Marketing Manager," [Record Document 1 at 6], Plaintiff has directed this Court to no record evidence of this fact. The only record evidence that could support Plaintiff's claim is Plaintiff's deposition in which he testified that other employees told him that Berry was "doing the work that I did." [Record Document 14-3 at 17–18]. Because these statements are hearsay, the Court cannot consider them. Hence, this Court may take as uncontroverted the statements in Ragle's affidavit that Berry "performed multiple and varied job duties including supervising other employees. None of these duties were performed by Mr. Lewis in his prior position at SPAR." [Record Document 14-2 at 7]. Because Plaintiff's and Berry's duties and salary were significantly different, promoting Plaintiff to the position ultimately filled by Berry would have had the effect of forming a new contract between Plaintiff and the City. Thus, the City's alleged failure to promote Plaintiff to Division Manager of Administration was subject to a one-year statute of limitations.

This Court has already determined that Plaintiff's Title VII and ADEA claims for failure to promote were equitably tolled until December 2014. [Record Document 9 at 6]. Because statutes of limitations for § 1981 claims are also subject to equitable tolling, *see Bourdais v. New Orleans City*, 485 F.3d 294, 298–99 (2007), Plaintiff's § 1981 failure-to-promote claim was also equitably tolled until December 2014. However, unlike Title VII or ADEA claims, § 1981 claims are not tolled by

filing an EEOC charge. *Taylor*, 775 F.2d at 618–19 (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465–66 (1975)). Thus, the period between Plaintiff's filing of an EEOC charge on May 12, 2015 and Plaintiff's receiving a right-to-sue letter on April 29, 2016 did not toll his one-year statute of limitations for his § 1981 claim. [Record Documents 5-2 at 1 and 5-3 at 3]. Plaintiff filed the instant suit on July 28, 2016, more than one year after tolling ceased in December 2014. Hence, Plaintiff's § 1981 claim is untimely, and the Court grants summary judgment for Defendant on Plaintiff's claim that the failure to hire him as the Division Manager of Administration violated § 1981.[7]

### 3. **ADEA Claim**

Plaintiff alleges that Defendant violated the ADEA by denying him a chance to apply for the Division Manager of Administration position and filling it with Berry, a younger worker. [Record Documents 1 at 12–13 and 14-3 at 15].[8] As with Plaintiff's Title VII claims, Defendant argues that Plaintiff was not qualified for the position and that even if he was, he was not "clearly better qualified" than Berry. [Record Document 14-4 at 14–16].[9]

---

[7] Plaintiff has also failed to properly plead his § 1981 claim. Section 1981 does not create a cause of action against a municipality for racial discrimination in contracting. *See Oden v. Oktibbeha Cty.*, 246 F.3d 458, 463–64 (5th Cir. 2001). Rather, § 1981 claims against municipalities must be raised under § 1983; a plaintiff must then establish municipal liability under the *Monell* "policy or practice" standard. *Evans v. City of Hous.*, 246 F.3d 344, 358 (5th Cir. 2001). Although the preferred remedy would be an opportunity to amend, *see Knox v. City of Monroe*, 551 F. Supp. 2d 504, 512 (W.D. La. 2008), because the Court concludes that Plaintiff's § 1981 claims are either time-barred or defeated by his failure to produce competent summary judgment evidence, any amendment would be futile.

[8] Although Plaintiff alleges wage discrimination as part of his Title VII and § 1981 claims, his ADEA claims concern only the failure to hire him for the division manager positions.

[9] As the City points out, Plaintiff's response does not specifically rebut its arguments regarding his ADEA claim. [Record Document 20 at 8]. However, given that the evaluation at the summary judgment stage of a Title VII claim is not substantially different from that of an ADEA claim and that Plaintiff is proceeding pro se, the Court will consider his Title VII arguments in the

Under the ADEA, an employer may not "fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C.A. § 623(a)(1) (2008 & Supp. 2017). A worker must be at least forty years old to receive ADEA protection. 29 U.S.C. § 631(a) (2012). To prevail in an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141–43 (2000)).

Because Plaintiff's only evidence of age discrimination is circumstantial, [Record Document 14-3 at 16], the *McDonnell Douglas* framework applies, *see Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. 792). Under this approach, Plaintiff must establish a prima facie case. *See Moss v. BMC Software, Inc.*, 610 F.3d 917 (5th Cir. 2010) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). If he is successful, the burden of production shifts to the City to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *See id.* (citing *Berquist*, 500 F.3d at 349). If the City successfully carries its burden, Plaintiff must then show that the proffered explanation is pretextual. *See id.* (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)).

To establish a prima facie case of age discrimination in hiring, Plaintiff must show: (1) that he was at least forty years old when he was not hired; (2) that he was qualified for and applied for a position; (3) that he was rejected from the position; and (4) that a younger applicant was hired. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680–81 (5th Cir. 2001) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 326–27 (5th Cir. 1993)). Here, of course, Plaintiff was not rejected from the position, but rather was never informed that it was open until it had already been filled by Berry. This

---

ADEA context as well.

circumstance is still cognizable employment discrimination because, as discussed above, Plaintiff would have applied had he known that the position was available. [Record Documents 1 at 6 and 14-3 at 15]. *See Bernard*, 841 F.2d at 570 (citing *Carmichael*, 738 F.2d at 1134).

Both parties agree that Plaintiff satisfies the first, third, and fourth elements of the prima facie case. He is over forty years old. [Record Documents 14-1 at 1 and 19 at 5]. He did not obtain the Division Manager of Administration position. [Record Document 14-1 at 3]. Berry, a worker under forty, was hired instead. [*Id.*]. However, while Plaintiff alleges that he was qualified for the position, the City argues that Plaintiff lacked the necessary qualifications. [Record Documents 14-4 at 11–12, 14–15 and 19 at 9–10]. As discussed above with respect to Plaintiff's Title VII claim, the evidence properly before the Court does not establish that Plaintiff was qualified for the Division Manager of Administration position. Plaintiff has thus failed to establish a prima facie case.

Even if Plaintiff had established a prima facie case, the City has successfully rebutted it. To rebut a prima facie case, an employer's legitimate, non-discriminatory reasons must be "articulate[d] . . . *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)). The evidence supporting the articulated reasons need only suffice to allow a reasonable factfinder to conclude on the basis of that evidence that a nondiscriminatory reason motivated the challenged employment action. *Palacios v. City of Crystal City*, 634 F. App'x 399, 402 (5th Cir. 2015) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)). Although differences in qualifications between two applicants are legitimate reasons, this is true only when the employer already knew that the hired applicant's qualifications were superior at the time that it made the decision to reject the plaintiff's application. *Patrick*, 394 F.3d at 318.

The City provide two explanations for its actions: Plaintiff was not qualified for the Division Manager of Administration position and Berry was better qualified than Plaintiff. [Record Document 14-2 at 5–6]. Because the position was not advertised, in order to justify its decision based on Berry's greater qualifications, the City would have needed to produce evidence that Ragle was aware of Berry's qualifications at the time that she decided not to invite Plaintiff to apply. *See Patrick*, 394 F.3d at 318. The City did not do so.

However, the City's other reason does meet its burden. According to the City, Ragle did not inform Plaintiff of the open position because she "knew that he did not have the necessary accounting, budgeting, supervisory, personnel and management skills experience [sic] needed to succeed in the position." [Record Document 14-2 at 6]. Ragle also avers:

> The position of Division Manager, Administration required significantly different job duties and responsibilities as well as educational levels and experience than the position held by Mr. Lewis as a Recreation Supervisor II. Likewise, my observation of Mr. Lewis' work at SPAR, [indicated that] the duties, responsibilities and requirements of the position exceeded Mr. Lewis' demonstrated capabilities.

[*Id.*]. Thus, the City clearly articulated reasons for Plaintiff to rebut in the final step of the *McDonnell Douglas* analysis.

To show that an ostensibly nondiscriminatory reason provided by a defendant is merely pretextual, a plaintiff may present evidence of disparate treatment. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves*, 530 U.S. at 143; *Wallace*, 271 F.3d at 220). The only disparate treatment Plaintiff alleges that he suffered as a result of his age was not being invited to apply for the position. [Record Document 1 at 12]. Plaintiff does not provide any evidence specifically illustrating that his age motivated Ragle's decision.[10]

---

[10] At several points in his complaint, Plaintiff asserts that the City has a policy of hiring internally and a policy of favoring veterans and that, by hiring Berry, a non-veteran who was not currently employed with the City, the City violated its own policy. [Record Document 1 at 11–13].

Alternately, a plaintiff can prove pretext via evidence that his "employer's proffered explanation is false or unworthy of credence." *Laxton*, 333 F.3d at 578 (internal quotation marks eliminated) (citing *Reeves*, 530 U.S. at 143; *Wallace*, 271 F.3d at 220). Where there is substantial evidence that the nondiscriminatory reason is true and the only contravening evidence comes from a plaintiff's own statements, that plaintiff does not carry her burden of demonstrating pretext. *Jackson*, 602 F.3d at 380–81. Plaintiff repeatedly asserts that the City's explanation for Ragle's decisions is false. [Record Document 19 at 8–12]. Specifically, he claims that the additional duties for which he was considered to lack the necessary qualifications were not performed by Berry until after he filed his first discrimination complaint and that previous occupants of Berry's position did not have advanced qualifications. [*Id.* at 10–11]. However, as discussed above, Plaintiff has not presented these assertions in the form of competent summary judgment evidence. Without evidence from a source other than Plaintiff's allegations, Plaintiff has failed to carry his burden to establish that the City's purported reasons for not informing him of the open position were pretextual. *See Jackson*, 602 F.3d at 380–81. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's ADEA claim for failure to hire him as the Division Manager of Administration.

**D. Failure to Promote Plaintiff to Division Manager of Communication Services**

Plaintiff has alleged that failing to promote him to the position of Division Manager of Communication Services vacated by Kennedy violated Title VII, § 1981, and the ADEA. [Record Document 1 at 11–13]. Plaintiff alleges that he requested promotion to Kennedy's former position

---

However, "an agency's disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) (citing *Sanchez v. Tex. Comm'n on Alcoholism*, 660 F.2d 658, 662 (5th Cir. 1981)). Therefore, without additional evidence, this allegation does not establish intentional discrimination. Moreover, Plaintiff has presented no competent summary judgment evidence of either his veteran status or Berry's lack of veteran status.

in January 2012 and that in August 2012, Ragle advised him "that there was no division manager position available, nor would there be one in the foreseeable future." [Record Documents 1 at 5 and 14-3 at 17]. Berry was then hired as the Division Manager of Administration to perform duties that Plaintiff alleges were identical to those that he had performed while in the Division of Communication Services at SPAR. [Record Document 14-3 at 17–18]. Defendant argues that there was no Division of Communication Services and that Kennedy retained her job title of Division Manager of Recreation until she moved to her new role as the Division Manager of Event Services. [Record Documents 14-2 at 3–4 and 14-4 at 5]. Because her position as the Division Manager of Recreation was filled by Nick Roberson, an African-American male, Defendant argues that there was no vacant position to which Plaintiff could be promoted. [Record Documents 14-2 at 3 and 14-4 at 5–6].

## 1. Title VII Claim

To carry his burden of establishing a prima facie case under Title VII, Plaintiff must show that he was a member of a protected class, that he sought and was qualified for an open position, that he was rejected, and that Defendant either hired someone outside of the protected class or continued to seek applicants with similar qualifications. *McMullin*, 782 F.3d at 258 (citing *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 643 (5th Cir. 2014); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007)). Plaintiff is an African-American male and so is a member of a protected class. [Record Documents 14-1 at 1 and 19 at 5]. If there was an open position of Division Manager of Communication Services, then he sought this position when he asked for a promotion in January 2012 and was rejected when Ragle informed him that there were no open positions. [Record Documents 14-2 at 3–4 and 14-3 at 12, 17]. If the position existed, it was ultimately never filled; some communications responsibilities were apparently assigned to the

Division of Administration. [Record Documents 14-2 at 5 and 14-3 at 17–18]. Therefore, Plaintiff has satisfied the fourth element of the prima facie case because a search continued after he was refused the position.

The parties dispute a portion of the second element of the prima facie case: whether there was an open position for which Plaintiff was qualified. In her affidavit, Ragle asserts that there was no Division of Communication Services at SPAR, [Record Document 14-2 at 3], while the documents that Plaintiff has attached to his opposition suggest that there may have been such a division, [Record Documents 19-1 and 19-2]. However, the Court cannot consider these unauthenticated documents. Because Plaintiff has failed to point to any other record evidence of the existence of a position of Division Manager of Communication Services, he has failed to meet his burden of production as to an essential element of his prima facie case. Hence, summary judgment is granted for Defendant on this claim.

### 2. Section 1981 Claim

As discussed above, the limitations period for a § 1981 failure-to-promote claim arising in Louisiana is one year if the positions are sufficiently different such that accepting the promotion creates a new contractual relationship between employee and employer; otherwise, the default four-year period applies. *Hill*, 541 F. App'x at 345 (citing *Patterson*, 491 U.S. at 185; *Police Ass'n of New Orleans*, 100 F.3d at 1170–71). Here, the position of Division Manager of Communication Services carried a new title as well as the duty to supervise at least one other employee because Kennedy, whom Plaintiff would have replaced, supervised Plaintiff. Moreover, the division manager positions at SPAR are unclassified, and all hires and their salaries must be approved by the City Council. [Record Document 7-1 at 2]. Therefore, the existence of a new title and new responsibilities as well as the requirement for council approval indicates that the promotion Plaintiff sought would

form a new contract between him and the City. As a result, the one-year statute of limitations applies.

The latest possible point in time to which the statute could be tolled is December 2014, when Plaintiff realized that the position that he sought had been eliminated and the responsibilities shifted to Berry. Plaintiff's claim is thus untimely because he did not file suit until July 2016. Therefore, summary judgment is granted for Defendant on the claim that failing to promote Plaintiff to Division Manager of Communications Services violated § 1981.

### 3. ADEA Claim

Plaintiff's ADEA claim regarding not being promoted to Kennedy's division manager position mirrors the analysis discussed above regarding Plaintiff's Title VII claim arising from the same factual circumstance. Because Plaintiff has failed to produce competent evidence to rebut the City's evidence that there was no Division of Communication Services, Defendant's motion for summary judgment is granted on this claim.

### E. Wage Discrimination in Initial Hiring

Plaintiff has alleged that he and other black employees at SPAR were hired at lower salaries than comparable white employees in violation of both Title VII and § 1981. [Record Document 1 at 8–9]. Defendant has indicated that Plaintiff made similar complaints in the past, but that when Ragle requested more information, Plaintiff did not provide any. [Record Document 14-2 at 4].

### 1. Title VII Claim

To state a prima facie case for wage discrimination under Title VII, a plaintiff must "show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor*, 554 F.3d at 522 (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984), *on reh'g in part on other grounds*, 753 F.2d 369 (5th Cir. 1985)). The circumstances of the plaintiff and the other employee must be "nearly identical." *Id.* at

523 (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

There is no dispute that Plaintiff is a member of a protected class; he is a African American. [Record Documents14-1 at 1 and 19 at 5]. While Plaintiff has claimed that he was hired at a starting salary that was lower than white employees in the same position, [Record Document 1 at 8], he has produced no competent evidence to support this claim. While he alleges his starting salary, [Record Document 8], he has neither alleged nor proven the specific salaries that were paid to non-black employees hired at the level of Recreation Supervisor I. Therefore, because Plaintiff has failed to make out a prima facie case that his initial salary was discriminatory, Defendant's motion for summary judgment is granted as to this claim.

## 2. Section 1981 Claim

Section 1981 claims for racially motivated disparities in pay are subject to a four-year statute of limitations. *Taylor*, 554 F.3d at 516 (citing 28 U.S.C. § 1658; *White*, 375 F.3d at 291–92). A claim that the setting of a salary or the denial of a raise violates § 1981 arises at the time of the adverse decision. *See Perez v. Laredo Junior Coll.*, 706 F.2d 731, 734 (5th Cir. 1983). While Congress has altered the accrual date for Title VII wage discrimination claims such that each pay date triggers a new limitations period, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5 (2009) (codified at 42 U.S.C. § 2000e-5(e)(3) (2012)), no comparable changes have been made to § 1981. Therefore, Plaintiff's four-year period began when he was hired by SPAR on July 16, 2006. Because Plaintiff did not file suit until July 28, 2016, his claim that his initial wage was set in a discriminatory manner is time-barred unless equitable tolling applies.

Plaintiff has alleged that "[f]rom the beginning of his employment with SPAR, [he] complained of his extremely low pay." [Record Document 1 at 3]. He has also alleged that at some point after being hired he became aware that Ragle engaged in a pattern of hiring black employees

at lower salaries than those of white employees. [*Id.* at 9]. He has not, however, alleged that this realization occurred after July 28, 2012. Therefore, because Plaintiff bears the burden of establishing his right to equitable tolling, *see Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642 (5th Cir. 1988)), this wage discrimination claim is barred by the statute of limitations.[11] The Court therefore grants Defendant's motion for summary judgment on Plaintiff's claim that his initial salary violated § 1981.

### F. Wage Discrimination While Working as the Public Relations and Marketing Supervisor

Plaintiff alleges that as the Public Relations and Marketing Supervisor, he was paid less than Berry was when she became the Division Manager of Administration even though they performed the same job duties. [Record Documents 1 at 6 and 14-3 at 17–19]. In response, Defendant argues that Berry's duties as the Division Manager of Administration were more extensive than Plaintiff's duties and that she had more relevant experience. [Record Document 14-4 at 10–12].[12]

---

[11] Although the Court has already ruled that equitable tolling applied to his claims related to the appointment of Berry to the Division Manager of Administration position, [Record Document 9], the claim at issue here does not depend on Plaintiff's knowledge of Berry or her appointment. Therefore, tolling can only run until the point at which Plaintiff should have become aware that he was being paid less than comparably situated white employees.

[12] Plaintiff also compares his pay while at SPAR to that of City employees other than Berry:

> Plaintiff's pay was some $20,000.00 less than the median pay for said position in the Shreveport metropolitan area and substantially less than other white employees holding similar positions for the City of Shreveport, including Mark Crawford, white male, with the Shreveport Airport Authority, and Bill Goodin, white male, with the Shreveport Police Department.

[Record Document 19 at 2]. "Employees with different supervisors [or] who work for different divisions of a company" are not valid comparators for purposes of an employment discrimination claim. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). Because Plaintiff's proposed comparators worked

23

### 1. <u>Title VII Claim</u>

To state his prima facie case, Plaintiff must show that he is a member of a protected class and that he was paid less than an employee with comparable duties who is not a member of the protected class. *Taylor*, 554 F.3d at 522 (citing *Uviedo*, 738 F.2d at 1431). Plaintiff is an African-American male and is thus a member of a protected class; Berry is a white woman and so is outside of Plaintiff's protected class. [Record Documents 1 at 2, 6 and 14-1 at 1, 3]. Plaintiff has testified that Berry's salary was two and a half times his salary. [Record Document 14-3 at 15]. To the extent that Plaintiff alleges that he was paid less than Berry for performing the same duties, Plaintiff has pointed to no record evidence demonstrating that his and Berry's duties were comparable. Although Plaintiff argues that Ragle's sworn statements that Berry's duties were much more extensive is false, [Record Document 19 at 8–12], his only evidence for this assertion is a series of hearsay statements, [Record Document 14-3 at 17–19]. As discussed above, the Court cannot consider these statements. Plaintiff has thus failed to establish a prima facie case of wage discrimination.

Even if Plaintiff had demonstrated a prima facie case, Defendant has provided two legitimate, non-discriminatory justifications: Berry's greater qualifications and the greater responsibilities of the Division Manager of Administration. Because "[d]ifferent job levels, different skill levels, previous training, and experience . . . all may account for unequal salaries in an environment free of discrimination," *Pouncy v. Prudential Ins. Co. of Am.*, 668 F.2d 795, 803 (5th Cir. 1982), the City has

---

for different branches of the municipal government, Plaintiff cannot rely upon them to establish his prima facie case.

    The complaint also alleges that other black employees at SPAR were paid less than their white counterparts. [Record Document 1 at 7–9]. Even if this evidence were presented in a form that the Court could consider on summary judgment, Plaintiff "cannot rely on general statistical evidence to establish a pattern of discrimination. Instead, he must present *prima facie* evidence that his pay was lower than *specific* employees who are not members of the protected class." *Taylor*, 554 F.3d at 523. Plaintiff has failed to do so.

stated legitimate, nondiscriminatory reasons for paying Berry more than it paid Plaintiff. To carry his

burden of showing pretext, Plaintiff must produce evidence rebutting each of the employer's stated

reasons. *Haire*, 719 F.3d at 363 (citing *Wallace*, 271 F.3d at 220). Again, Plaintiff offers no evidence

in rebuttal and merely argues that Ragle's affidavit is false. [Record Document 19 at 8–12]. Plaintiff

therefore fails to carry his burden of showing that the City's reasons for setting Berry's salary at the

level that it did were pretextual. As a result, the Court grants summary judgment in Defendant's favor

on Plaintiff's claim that his pay while working as the Public Relations and Marketing Supervisor

violated Title VII.

### 2. Section 1981 Claim

As discussed above, because § 1981 claims for racially motivated disparities in pay are subject

to a four-year statute of limitations, *Taylor*, 554 F.3d at 516 (citing 28 U.S.C. § 1658; *White*, 375 F.3d

at 291–92), Plaintiff's claims that arose prior to July 28, 2012 are time-barred. The Court has already

concluded that Plaintiff's failure-to-promote claims were equitably tolled until December 2014 when

Plaintiff discovered that Berry had been hired as the Division Manager of Administration. [Record

Document 9 at 6]. Although the Court reached that conclusion in the context of the ADEA and Title

VII claims, equitable tolling also applies to § 1981 claims. *Bourdais*, 485 F.3d at 298–99. Plaintiff

could not have known that he was being underpaid for the particular duties that he was fulfilling until

he learned that his successor to those duties (even though she had a different title) was being paid

more than he had been. This did not occur until December 2014 when he learned of Berry's

appointment. As a result, Plaintiff's § 1981 claim for wage discrimination while he worked in

Government Plaza as the Public Relations and Marketing Manager is timely.

The only differences between § 1981 claims and Title VII claims are the longer limitations

periods of the former and the administrative exhaustion requirements of the latter. *Jones v. Robinson*

*Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 351 (5th Cir. 2001), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Otherwise, the analysis of a § 1981 claim is "identical" to that of a Title VII claim. *Id.* (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)). Hence, for the reasons discussed above with regard to Plaintiff's Title VII wage discrimination claim, Plaintiff's § 1981 claim cannot survive summary judgment because he has not met his burden of production. Defendant's motion is thus granted on this claim regarding Plaintiff's salary as the Public Relations and Marketing Manager.

### III. Conclusion

Therefore, Defendant's motion for summary judgment [Record Document 14] is **GRANTED**.

**IT IS ORDERED** that all claims against the City are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this *14*ᵗʰ day of February, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE